IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN MYERS, et al.,<br><br>        Plaintiffs,<br><br>  vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants.<br>_____/ | No. C 08-1163 MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Re: Dkt. No. 154** |

## I. INTRODUCTION AND BACKGROUND

On February 27, 2008, Plaintiffs Shawn Myers and Sarah Myers initiated this action against Defendants City and County of San Francisco (City), San Francisco Police Department (SFPD) Chief of Police Heather Fong, and SFPD Officers Jesse Serna and Gary Moriyama (Officers).[1] Dkt. No. 1, Compl. Plaintiffs' Complaint stems from an incident that occurred on the afternoon of February 24, 2007 outside of the Ferry Building in San Francisco. Dkt. No. 157, Joint Statement of Undisputed Facts (JSF) ¶¶ 1, 10.[2] At that time, Serna and Moriyama were looking for three suspects who had recently arrived at the Ferry Building after fleeing the scene of a fight where the victim was punched in the face with brass knuckles and left unconscious. JSF ¶¶ 1, 9, 10. Shawn, who had just

---

[1] For the purpose of clarity, this Order occasionally refers to the Plaintiffs by their first names.

[2] The parties dispute many of the facts at issue in this matter, which is evidenced by the lengthy separate statements of facts that both parties submitted. The Court consequently provides this brief summary of the incident solely for background purposes. In the analysis below, the Court only discusses the *disputed* facts in detail and only rules on the parties' evidentiary objections when they are material to the disposition of Defendants' Motion. The Court notes that it does not consider any boilerplate evidentiary objections that fail to specifically address which part of an exhibit that the party is objecting to.

disembarked from a ferry ride with his wife Sarah and was not involved in the earlier assault, observed three men exiting their car and Serna and Moriyama subsequently arriving to inspect the car. JSF ¶¶ 11, 12, 16.

The parties dispute whether Shawn then purposefully misled the investigating Officers into looking for the suspects in the wrong direction. Dkt. No. 162, Plaintiffs' Separate Statement of Material Facts (PSF) ¶¶ 25-31; Dkt. No. 158, Defendants' Separate Statement of Material Facts (DSF) ¶¶ 20-30.[3] Eventually, two of the suspects were apprehended, with Serna using force to take down Jamal Jackson (who was the suspect believed to have punched the victim in the earlier assault). DSF ¶¶ 38, 40, 54. When Jackson asked the crowd that had gathered if anybody saw Serna hit him, Shawn replied in the affirmative and indicated that he was willing to provide his contact information to Jackson. JSF ¶ 61. As Shawn stepped forward, Serna told him that he was under arrest and to place his hands behind his back. PSF ¶ 51; DSF ¶ 74. In the ensuing scuffle — the details of which both parties vehemently dispute — Shawn was physically taken down by both the Officers and Sarah was pepper sprayed by Serna. JSF ¶¶ 95, 97, 101, 102. Both Shawn and Sarah were then taken into custody. PSF ¶¶ 103, 105.

Plaintiffs' Complaint alleges the following claims against Defendants based on the events described above: (1) individual 42 U.S.C. § 1983 (Section 1983) claims against Serna, Moriyama,

---

[3] The Court admonishes both parties for their inability to provide a concise joint statement of facts for the issues raised by this Motion. Defendants included immaterial facts in their statement and ignored unfavorable testimony even though the Court must interpret such testimony in Plaintiffs' favor. Also troubling is Plaintiffs' decision to not provide any justification for disputing some of Defendants' facts. For instance, DSF ¶ 74 provides that Shawn's hands were in his pockets when Serna approached him. Plaintiffs apparently did not agree to this fact, yet they used the same exact language in their own statement (PSF ¶ 67). The same is true for DSF ¶ 23, where Defendants provide that Shawn testified that he saw the Officers walk toward the parking lot. Rather than agreeing to this fact, Plaintiffs chose to provide essentially the same detail in their own statement (PSF ¶ 30). Plaintiffs also appear to dispute that Shawn testified that he was wearing a hooded sweatshirt, parka, and stocking cap at the time of the incident (DSF ¶ 108) without any rational justification. Both parties' failures in this regard have made the review and analysis of Defendants' Motion more difficult than necessary.

2

Fong, and the City for the violation of Plaintiffs' constitutional rights to be free from unreasonable searches and seizures;[4] (2) assault and battery against Serna and Moriyama; (3) false imprisonment against Serna and Moriyama; (4) intentional infliction of emotional distress (IIED) against Serna and Moriyama; (5) negligent infliction of emotional distress (NIED) against Serna and Moriyama; (6) violation of California Civil Code § 51.7 (Section 51.7) against Serna and Moriyama; (7) violation of California Civil Code § 52.1 (Section 52.1) against Serna and Moriyama; (8) negligence against Serna and Moriyama;[5] and (9) negligent hiring, retention, training, supervision, and discipline against the City. Compl. Defendants now move for partial summary judgment, arguing that each of Plaintiffs' claims should be dismissed except for what appears to be the NIED claim and Shawn's Section 51.7 claim.[6] Dkt. No. 154. Plaintiffs have filed an Opposition, to which Defendants have filed a Reply. Dkt. Nos. 161 and 177. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to

---

[4] Plaintiffs assert their Section 1983 claims separately against the Defendants in the first three claims of their Complaint. Compl. ¶¶ 24-39.

[5] Plaintiffs specifically allege in this claim that the City is vicariously liable for Serna and Moriyama's negligent conduct. Compl. ¶¶ 63-65.

[6] The Court notes that Defendants' Motion fails to clearly address which of Plaintiffs' claims they are moving against. The filing is titled as a "Motion for Summary or Partial Summary Judgment" but the language in the Notice only asks for partial summary judgment. The Notice provides that Defendants are moving against each of Plaintiffs' claims, but the Motion itself does not provide any arguments with respect to Plaintiffs' NIED claim or Shawn's Section 51.7 claim. Defendants also did not file a proposed order, making it difficult for the Court to ascertain the exact relief they are seeking. Lastly, Defendants' Motion does not provide direct arguments against each of Plaintiffs' specific and enumerated claims; rather, the Motion simply raises various issues with Plaintiffs' Complaint. The Court is therefore forced to address these issues in turn rather than discuss Plaintiffs' claims in an organized claim-by-claim manner.

3

demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

The Court addresses the arguments in Defendants' Motion in order, starting with the federal claims first.

**A. Section 1983 Claims**

1. <u>Shawn's Unlawful Arrest Claim</u>

Defendants first attack Shawn's claim that he was wrongfully arrested by Serna and Moriyama. A claim for unlawful arrest is cognizable under Section 1983 as a violation of the Fourth Amendment, provided that the arrest was without probable cause or other justification. *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). "An arrest is supported by probable cause if, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal quotations and citations omitted). "The critical issue in assessing allegations of Fourth Amendment violations is *reasonableness*, for what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Eiler v. City of Santa Rosa*, 2010 WL 2382432, at *6 (N.D. Cal. June 10, 2010) (internal quotations and citations omitted) (emphasis added).

Defendants argue that the Officers had probable cause to arrest Shawn for violation of

4

1 California Penal Code § 148 (Section 148).  Section 148 provides that any "person who willfully
2 resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any
3 duty of his or her office or employment" is guilty of a criminal offense.  Defendants contend that
4 Shawn violated Section 148 on two occasions: (1) when he initially misdirected the Officers by
5 telling them that Jackson was in the parking lot when he was in fact at the Ferry Building; and (2)
6 when he later interjected himself into the arrest of Jackson.

7        Defendants' argument ignores the requirement that the Court must view all of the evidence
8 on summary judgment in a light most favorable to Plaintiffs.  If the Court were to adopt Defendants'
9 version of the events, they may be correct that Serna and Moriyama had probable cause to arrest
10 Shawn for violating Section 148.  But the Court cannot do so since it is mandated to leave the task of
11 sorting through the disputed facts to the jury.  Thus, Defendants' argument that there was probable
12 cause because the Officers had a good faith belief that they had been misdirected by Shawn is not
13 persuasive since it based on facts that the Court cannot consider.  It assumes that the Officers'
14 testimony about their good faith belief is true and disregards Shawn's testimony, which provides that
15 he did not misdirect the Officers and the only reason they arrested him was because he volunteered
16 to corroborate Jackson's account that Serna used unreasonable force to arrest him.  Dkt. No. 156,
17 Connolly Decl., Ex. D (Shawn's Depo.) at 121-23, 145.[7]

18        For similar reasons, this Court cannot find that as a matter of law the Officers had probable
19 cause to arrest Shawn for interjecting into Jackson's arrest.  Again, when the evidence is viewed in a
20 light most favorable to Plaintiffs, a rational juror could determine that Shawn's interjection only
21 consisted of him stepping forward and stating out loud that he was willing to act as witness for

---

[7] Defendants argue that Shawn's explanation that he did not willfully misdirect the Officers is not credible because he did nothing to rectify or correct the situation when he saw the Officers heading towards the parking lot rather than the Ferry Building.  Defendants, however, provide no authority that would have required Shawn to affirmatively tell the Officers they were heading in the wrong direction.  Moreover, this does not change the Court's analysis.  When the evidence is viewed in a light most favorable to Plaintiffs, a rational juror could believe Shawn's testimony, concluding that he did not misdirect the Officers, and they never had a good faith belief that they were misdirected since they only arrested Shawn for volunteering to be Jackson's witness.

5

Jackson regarding Serna's conduct. *Id.* at 145, 148.[8] It will be up to the jury to evaluate whether under these facts, based on the totality of circumstances, a prudent person would have concluded that there was a fair probability that Shawn was violating Section 148.[9]

Defendants next argue that even if the Officers did not have probable cause to arrest Shawn, they properly detained him based on police safety concerns. According to Defendants, Shawn — who was a large man that had not been ruled out as being a suspect in the earlier assault — interjected himself into Jackson's arrest and stepped towards Serna, challenging Serna while refusing to take his hands out of his jacket's pockets (where he could have been carrying a weapon). The Officers, out of fear for the safety of themselves and the public, were therefore forced to detain Shawn by bringing him to the ground. Defendants' position, however, is not persuasive because it presupposes that the Court may rule on this Motion based on their version of the facts. The Court must view the evidence from Plaintiffs' perspective. This perspective is that Shawn did not interject himself into the arrest, but merely stepped forward to state that he was willing to be a witness for Jackson. Shawn's Depo. at 145. At this point, Serna moved towards Shawn and told him that he was under arrest. *Id.* When Shawn asked why, the Officers responded by grabbing him by the jacket, punching him, and taking him to the ground. *Id.* at 152-54 (Shawn testified as follows: "I recall getting punched in the jaw. I recall getting an arm wrapped around my neck, my chin being pushed up towards the sky, my legs being kicked up from under me. And me slammed on my stomach on the concrete."). Based on these facts, a rational juror could side with Plaintiffs and find

---

[8] Defendants complain that Plaintiffs are primarily relying on testimony from third-party witnesses who are more likely to have only seen a portion of the events, making their accounts less reliable than the testimony of the main characters in this dispute: Shawn, Sarah, Serna, and Moriyama. While the Court agrees with the general proposition behind this point, the argument is misplaced since the Court cannot evaluate any issues of fact at this stage of the proceedings. Defendants remain free to point this out to the jury, which is permitted to make such fact evaluations and credibility determinations.

[9] Defendants' case citations to courts that found conduct less extreme than Shawn's to be sufficient to support a conviction for Section 148 also miss the mark. These decisions would only apply here if the Court ignored Shawn's testimony and adopted Defendants' self-serving statements.

1 that the Officers assaulted and arrested Shawn not out of concern for their safety, but because he was
2 willing to act as a witness for Jackson. Defendants' arguments with respect to Shawn's unlawful
3 arrest claim are consequently DENIED.[10]

2. Shawn's Use of Force Claim

Defendant's Motion then challenges Shawn's claim that the Officers violated his constitutional rights by using unreasonable force to detain and arrest him. Pursuant to the Fourth Amendment, the police may only use such force as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine whether Serna and Moriyama's use of force was reasonable, this Court must balance the "nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (internal quotations and citations omitted). This balancing requires the Court to "assess the quantum of force used" and then "measure the governmental interests at stake" by considering "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotations and citations omitted). Since cases involving police misconduct almost always involve disputed facts and turn on credibility determinations, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

The Ninth Circuit's warning in *Drummond* that summary judgment in excessive force cases should be granted sparingly aptly applies here. Defendants' arguments, like those with respect to the previous claim, would only be persuasive if the material facts regarding the incident were

---

[10] Defendants also argue that Plaintiffs cannot claim a First Amendment right to observe or speak to the Officers during their arrest of Jackson. In their Opposition, Plaintiffs respond by asserting that they did have a First Amendment right to challenge unlawful police action. The Court does not consider either of these arguments. Plaintiffs' Section 1983 claim only alleges that their Fourth and Fourteenth Amendment rights were violated; the claim does not mention the First Amendment at all. Compl. ¶¶ 24-39.

7

undisputed. Instead, Shawn — unlike the Officers — contends that he did nothing wrong; he simply volunteered to act as a witness regarding Serna's alleged assault on Jackson. Shawn Depo. at 145. He claims that he was passively standing along with other onlookers when he was grabbed, punched, and slammed to the ground by the Officers, although he never attempted to resist. *Id.* at 145, 152-54. Even if Shawn did refuse to remove his hands from his pockets when ordered, and the Officers were justified in detaining him, the question would still remain whether the force used by the Officers was reasonable under the circumstances. Based on this and the existing disputes about what actually transpired, the excessive force question is proper for a jury to address. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) ("Whether the amount of force used was reasonable is usually a question of fact to be determined by the jury."). Thus, Defendants' arguments on this claim are DENIED.

### 3. Sarah's Unlawful Arrest/Use of Force Claims

Defendants' attacks against Sarah's claims fail for the same reasons as the arguments against Shawn's claims. The Officers claim that their conduct was reasonable because they warned Sarah — who was moving towards them while they were trying to detain her husband — not to interfere or she would be pepper sprayed. JSF ¶ 100. The Court, however, cannot adopt the Officers' self-serving statements because they contradict Sarah's testimony that she was never instructed by the Officers to stay away and was never warned before she was pepper sprayed. JSF ¶ 103. Defendants are correct that Sarah concedes that she was moving toward the Officers as they were arresting Shawn. JSF ¶ 99 (providing that "Sarah Myers testified that she moved toward the officers, first six feet away and then 'maybe three feet' away from where the officers were on the ground attempting to control her husband"). But it will be up to a jury to determine whether this movement was enough under the circumstances to amount to the Officers having probable cause to arrest her for violating Section 148. Moreover, even if the Officers had probable cause for the arrest, the jury will have to consider the totality of circumstances to determine whether pepper spraying Sarah under

1  these conditions was a justifiable use of force.[11]   These arguments from Defendants are therefore
2  also DENIED.[12]

### 4. Qualified Immunity

Defendants next assert qualified immunity defenses to both Shawn and Sarah's unlawful arrest and excessive force claims. "Qualified immunity shields government officials from liability provided that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Reza v. Pearce*, 2011 WL 5024265, at *1 (D. Ariz. Oct. 21, 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  In determining whether qualified immunity applies, the Court must consider (1) whether the alleged facts "make out a violation of a constitutional right," and (2) if so, whether the right "was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.  The Court may consider these two steps in any order. *Id*. at 236.

In general, qualified immunity should not be granted when a court determines that there are material factual disputes regarding whether or not the police officers acted reasonably or used excessive force. *See Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir. 2002); *Fleming v. Clark*, 2010 WL 3516112, at *5 (N.D. Cal. Sept. 8, 2010) (denying summary judgment with respect to a qualified immunity defense on an excessive force claim because "there are several disputed issues of

---

[11] Defendants argue that Sarah's claims are identical to the plaintiff's claims in *Jackson v. City of Bremerton*, where the Ninth Circuit affirmed the trial court's decision to grant summary judgment in favor of the defendants under the same circumstances as presented in this matter. 268 F.3d 646, 653 (9th Cir. 2001). However, in *Jackson*, the plaintiff conceded that she ran to interfere with the officer's arrest and ignored warnings that she would be pepper sprayed. *Id.* at 650, 653 ("Jackson, who heard the warning, also chose to ignore the officers' orders, and instead began to directly interfere with Officer Davis' attempt to maintain order."). Here, Sarah testified that she never interfered with her husband's arrest and was not warned that she would be pepper sprayed. JSF ¶ 103.

[12] Defendants' argument that Moriyama cannot be liable for *any* Fourth Amendment violation against Sarah because he never pepper sprayed her is DENIED.  There are sufficient facts in the record that may lead a rational juror to conclude that Moriyama was involved in Sarah's alleged unlawful arrest, which would constitute a Fourth Amendment violation for an unreasonable seizure.

9

1  fact regarding the length of the search, the use of handcuffs and the use of guns, [so] the Court finds
2  this issue inappropriate for disposition on summary judgment"); *Siwiec v. Thompson*, 2004 WL
3  2480516, at *11 (D. Or. Nov. 4, 2004) ("Because the record reveals this disputed issue of fact
4  regarding a Fourth Amendment violation, and the right in question was clearly established at the
5  time of Siwiec's arrest, Thompson enjoys no qualified immunity defense to the Second Claim.").
6  That is the case here. As explained earlier, the record before the Court shows that there are genuine
7  issues for trial regarding whether the Officers had probable cause to arrest Plaintiffs and whether
8  they used excessive force while doing so. Thus, Defendants' request for qualified immunity is
9  DENIED.

        5. <u>Municipal Liability Claim Against the City</u>[13]

Lastly, Defendants argue that Plaintiffs cannot present any evidence to support their Section 1983 claim against the City. Pursuant to *Monell v. Department of Social Services of City of New York*, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). To establish municipal liability under Section 1983, a plaintiff must show that (1) he was deprived of a constitutional right; (2) the municipality had a custom or policy; (3) that amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *East v. City of Richmond*, 2010 WL 4580112, at *3 (N.D. Cal. Nov. 3, 2010). Municipal liability may be based on (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the decision of a person with final policymaking authority ratifying a subordinate's unconstitutional

---

[13] As Defendants correctly point out in footnote 4 of their Motion, Plaintiffs' Complaint only asserts claims against Fong in her official capacity as Chief of the SFPD. Because official capacity claims are just another method of filing claims against the public entity, the Court treats Plaintiffs' Section 1983 claim against the City and Fong as one claim against the municipality. *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Butler v. Elle,* 281 F.3d 1014, 1023 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded.").

10

decision or action and the basis for it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988). A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

In their Opposition, Plaintiffs contend that they have set forth a valid *Monell* claim under this last theory, arguing that the City was aware that Serna and other police officers were frequently using excessive force and yet nothing was done about it. To support this claim, Plaintiffs have submitted the following evidence: (1) Serna's use of force logs from the SFPD; (2) local newspaper articles about the excessive use of force employed by SFPD officers, particularly Serna, and the lawsuits stemming from such incidents;[14] (3) 21 citizen complaints filed specifically against Serna (where other officers were also involved); (4) docket sheets, complaints, and declarations from other lawsuits filed against Serna and other officers; and (5) a declaration from Roger Clark, a police practices expert, who concludes that the City's failure to adequately discipline and terminate officers, particularly Serna, amounts to a deliberate indifference of Plaintiffs' constitutional rights.

Even if the Court were to overrule Defendants' objections and consider all of this evidence, it would still find that Plaintiffs have failed to raise a triable issue on this claim. Plaintiffs' evidence shows that Serna has used force frequently, with many incidents leading to complaints from citizens and some even leading to lawsuits, a few of which have been settled by the City. A *Monell* claim, however, is only actionable if there is evidence of a deliberate and *systematic* municipal policy, and failing to discipline one single officer does not meet this requirement. *Meas v. City and Cnty. of San*

---

[14] For background purposes only, the Court notes that in February 2006 (one year prior to the subject incident), the San Francisco Chronicle reported that Serna was the highest user of force — out of the 2,200 officers in the SFPD — during a nine-year period analyzed by the newspaper. Dkt. No. 163, Keating Decl., Ex. 2. Serna reported using force during 57 incidents, which was 50 percent more than the next highest officer's. *Id.* On nine occasions, Serna made the SFPD's internal watch list of officers who use force frequently. *Id.* During this period, Serna injured 31 people. *Id.* In another San Francisco Chronicle article published in 2009, the newspaper reported that two previous lawsuits complaining about Serna's use of excessive force were settled by the City for $195,000, and the City had recently offered $350,000 to settle another lawsuit currently pending against Serna. *Id.*, Ex. 3. Serna was eventually terminated by the SFPD in 2011. *Id.*, Ex. 14.

*Francisco*, 681 F.Supp.2d 1128, 1142 (N.D. Cal. 2010); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007) ("However, evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy . . . . We explained that, absent evidence of a '*program-wide* inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant — a much lower standard of fault than deliberate indifference.'") (quoting *Alexander v. City and Cnty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) (emphasis added)). Plaintiffs' only attempt to distinguish these cases is a footnote arguing that the citizen complaints and other lawsuits submitted as evidence in this matter involve other officers besides Serna who were also accused of using excessive force. But evidence that other officers were named in lawsuits alongside Serna or were mentioned in citizen complaints does not support that the City failed to adequately discipline these particular officers. These unnamed officers[15] may have merely been present with Serna when the incidents took place, and Plaintiffs have not presented any admissible evidence that these officers did anything wrong during these incidents. Moreover, Plaintiff has not pointed to any evidence that these officers were habitual offenders that should have been reprimanded by the City. Accordingly, the Court finds that Plaintiffs have failed to raise a genuine dispute that the City had a systematic policy of failing to adequately discipline or reprimand officers. Thus, Defendants' Motion on this issue is GRANTED.

To the extent that Plaintiffs argue that the City is liable under *Monell* because Fong was a person with final policymaking authority who ratified Serna's acts and the basis for them, that argument is also DENIED. To prevail under such a ratification theory, Plaintiffs are required to prove that a person with final policymaking authority knew about a subordinate's ongoing constitutional violations and approved of those violations. *Christie v. Iopa*, 176 F.3d 1231, 1239-40 (9th Cir. 1999). In other words, there must be "evidence of a conscious, affirmative choice" on the part of the final policymaker to condone the acts. *Gillette*, 979 F.2d at 1347. "For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not

---

[15] Plaintiffs' Opposition does not specifically name any other officers that the City failed to adequately discipline besides Serna.

constitute approval." *Christie*, 176 F.3d at 1239. Here, Plaintiffs contend there was "deliberate indifference in repeatedly sending Serna out into the field given his history." Dkt. No. 161 at 24. Moreover, Fong, on several occasions, issued lesser penalties to Serna than had been recommended by a review of certain citizen complaints. Both of these arguments, however, fail to present any evidence that Fong, as a final policymaking authority, actually made a "conscious, affirmative choice" to condone Serna's acts. Even if Plaintiff's purported evidence about Fong issuing "lesser penalties" is accurate,[16] it merely shows that Fong refused to overrule Serna's past conduct. As explained by the cases above, this is not enough to create a triable issue under the ratification theory. Thus, Defendants' Motion on these grounds is GRANTED, and Plaintiffs' *Monell* claim against the City and Fong is DISMISSED.

**B. State Law Claims**

The Court first notes that Defendants' Reply does not provide any arguments with respect to Plaintiffs' state law claims. As explained in further detail below, the Court finds Plaintiffs' Opposition persuasive with respect to the issues raised by Defendants on these claims and consequently DENIES each of Defendants' state law arguments from their Motion.

1. California Government Code § 821.6 (Section 821.6)

Defendants first argue that Section 821.6 provides the Officers with absolute immunity against Plaintiffs' state law claims for negligence, IIED, and the claims under Sections 51.7 and 52.1. Section 821.6 provides that: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." It is true that some California appellate courts have interpreted this immunity broadly and applied it to torts such as negligence, IIED, and Sections 51.7 and 52.1. This Court, however, has previously analyzed this specific issue and explicitly held that Section 821.6 only immunizes public employees from malicious prosecution

---

[16] Defendants correctly point out that a review of some of the citizen complaints cited by Plaintiffs resulted in a recommendation to admonish and retrain Serna, which Fong agreed and complied with. *See, e.g.*, Keating Decl., Ex. 3 at 237.

13

claims. *Dinius v. Perdock*, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012) ("The Court agrees with the California Supreme Court's decision in *Sullivan* and finds that Section 821.6 only applies to claims for malicious prosecution."); *Tucker v. City of Richmond*, 2012 WL 2571314, at *4-5 (N.D. Cal. July 2, 2012) (rejecting the defendants' arguments that Section 821.6 provides officers with immunity against the plaintiff's claims for false imprisonment, NIED, and IIED). The Defendants' Motion on these grounds is therefore DENIED.[17]

### 2. California Penal Code § 847 (Section 847)

Defendants next argue that Serna and Moriyama cannot be liable for false imprisonment due to Section 847 immunity. This statute immunizes law enforcement officers for an arrest that they had reasonable cause to believe was lawful at the time of the arrest. Cal. Pen. Code § 847. Defendants invoke this immunity under the theory that they were justified in arresting Plaintiffs for interfering and obstructing a police investigation. But, as explained earlier, there is a genuine dispute of material fact with respect to this issue. Accordingly, Section 847 does not apply.

### 3. IIED Claim

Defendants attack Plaintiffs' IIED claim on the grounds that "vile remarks" are not enough to support the claim, and, even if they were, Plaintiffs cannot show that they suffered severe or extreme emotional distress.[18] These arguments miss the mark. Plaintiffs' IIED claim is based on more than just the racist remarks made by Serna and Moriyama. It is also based on evidence, as discussed previously, which a reasonable juror may find shows that the Officers' unreasonable assault and

---

[17] Defendants appear to argue that Section 821.6 immunity should apply to Plaintiffs' eleventh claim for negligent hiring against the City. But Section 821.6 only immunizes public employees. If Defendants meant to move against Plaintiffs' eleventh claim under California Government Code § 815.2, which provides a similar immunity as Section 821.6 but to public entities, that argument would still fail for the same reasons as Section 821.6: the immunity does not apply to California state law claims outside malicious prosecution.

[18] For Plaintiffs to prevail on their IIED claim, they must establish (1) outrageous conduct by the Defendants; (2) an intention by the Defendants to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link between the tortious conduct and the emotional distress. *Nally v. Grace Cnty. Church of the Valley*, 47 Cal.3d 278, 301 (1988).

battery of Plaintiffs constituted extreme and outrageous conduct. A reasonable juror may also conclude that this conduct led to Plaintiffs suffering severe emotional distress. Thus, Defendants' arguments with respect to the IIED claim are DENIED.

### 4. Sarah's Section 51.7 Claim

Section 51.7 protects individuals from violence on account of multiple protected characteristics, including race, sex, and marital status. Cal. Civ. Code § 51.7; *see also Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 869, 880 (2007). Defendants argue that Sarah's Section 51.7 claim cannot withstand summary judgment because there is no evidence that Serna and Moriyama's acts against her were based on her race. But Plaintiffs have presented testimony that Serna and Moriyama referred to Sarah as an "ugly white bitch" during the incident. PSF ¶ 104. Based on this evidence, a reasonable juror could conclude that Sarah's race and sex were motivating factors behind Serna and Moriyama's conduct. This argument from Defendants is therefore also DENIED.

### 5. Section 52.1 Claim

Section 52.1 provides individuals with a private right of action if improper means (i.e., threats, intimidation, or coercion) are used to interfere with their civil rights. Cal. Civ. Code § 52.1; *see also Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 959 (2012). Defendants contend that Plaintiffs' Section 52.1 claim fails as a matter of law because "there is no evidence that the officers' use of force was coupled with any intent to interfere with the exercise of a constitutional right." Dkt. No. 154 at 25. The Court disagrees. Shawn has pointed to evidence that Serna and Moriyama assaulted him so that he would not exercise his right to free speech and act as a witness about the use of force employed to arrest Jackson. Similarly, Sarah has presented evidence that she was only pepper sprayed for questioning the arrest of her husband. Based on this evidence — which the Court must view in a light most favorable to Plaintiffs at this stage of the proceedings — a reasonable juror may find that Serna and Moriyama used improper means to interfere with Plaintiffs' civil rights. Thus, Defendants' Section 52.1 argument is DENIED.

### 6. Negligent Hiring Claim

Lastly, Defendants argue that Plaintiffs cannot maintain a claim against the City for negligent hiring, retention, training, supervision, and discipline because they have conceded that Serna and Moriyama were acting in the course and scope of their employment. Dkt. No. 154 at 25 (citing *Diaz v. Carcamo*, 51 Cal.4th 1148, 1158 (2011) (finding that an employer's admission of vicarious liability for its employee's negligence makes claims of negligent hiring against the employer irrelevant)). But, as Plaintiffs point out in their Opposition, the negligent hiring claim at issue here against the employer (the City) is different than in *Diaz* because it is independent from the claims against the employees (Serna and Moriyama). Plaintiffs are not only claiming that the City is responsible for negligently hiring Serna and Moriyama; rather, they are claiming that the City's failure to properly train, supervise, and discipline independently contributed to the harm suffered by Plaintiffs. Defendants' argument is consequently misplaced and DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.[19] The parties shall meet and confer and file a joint statement with the Court by October 10, 2012. The joint statement shall specifically propose a trial schedule for this matter and discuss both of the parties' positions with respect to engaging in further settlement discussions with another magistrate judge.

**IT IS SO ORDERED.**

Dated: September 18, 2012

Maria-Elena James
Chief United States Magistrate Judge

---

[19] At the end of their Opposition, Plaintiffs outline several problems that they have had in obtaining certain discovery from Defendants. If this is an attempt to compel discovery, it is improper to raise such a request in an opposition and it is therefore DENIED. If this is a request, pursuant to FRCP 56(d), for more time to obtain evidence to oppose summary judgment, it is also DENIED since discovery in this matter has closed and Plaintiffs' request to reopen it has already been denied by the Court. *See* Dkt. No. 151.