IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN MYERS, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants.<br>_____/ | No. C 08-1163 MEJ<br><br>**ORDER DENYING DEFENDANTS' REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>**Re: Dkt. No. 185** |

On October 4, 2012, Defendants City and County of San Francisco (City), San Francisco Police Department (SFPD) Chief of Police Heather Fong, and SFPD Officers Jesse Serna and Gary Moriyama (Officers) filed a request for leave to file a motion for reconsideration (Dkt. No. 185) on the Court's September 18, 2012 summary judgment order (Dkt. No. 184). The Court invited Plaintiffs Shawn and Sarah Myers to respond to Defendants' request (Dkt. No. 186), which Plaintiffs accepted by filing an opposition on October 11, 2012 (Dkt. No. 188). Having considered the parties' arguments, the Court hereby DENIES Defendants' request for leave to file a motion for reconsideration for the reasons explained below.

In the order on Defendants' motion for summary judgment, the Court analyzed each of Plaintiffs' claims, particularly those under 42 U.S.C. § 1983 (Section 1983). Defendants' motion with respect to Plaintiffs' *Monell* claims against the City and Fong was granted and these claims were dismissed from the lawsuit. The Court, however, denied Defendants' motion on Plaintiffs' unlawful arrest and excessive force claims against Serna and Moriyama, reasoning that a genuine

dispute of material fact remained on these Section 1983 issues. The Court also denied Defendants' motion with respect to Plaintiffs' state law claims against Serna, Moriyama, and the City.

In the request currently pending before the Court, Defendants do not argue that the Court's decision was incorrect about the *Monell* claims, the state law claims, Sarah's unlawful arrest and excessive force claims, or Shawn's excessive force claim. Instead, Defendants only ask the Court for leave to file a motion for reconsideration on Shawn's unlawful arrest claim.[1] Defendants contend that granting leave is appropriate under Civil Local Rule (L.R.) 7-9(b)(3) since there was a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented" previously. Dkt. No. 185 at 1. Defendants' position is essentially based on two factual issues that it claims were undisputed and not properly considered by the Court in reaching its decision. First, Defendants argue that it is undisputed that the Officers reasonably believed that Shawn had initially misdirected them about the location of the suspects and consequently there was probable cause to arrest him for violating California Penal Code section 148 (Section 148).[2] *Id.* Second, Defendants contend that there was also probable cause to arrest Shawn for violating Section 148 because it is undisputed that he failed to take his hands out of his pockets when ordered to do so by the Officers. *Id.* Moreover, even if Serna and Moriyama did not have probable cause to arrest Shawn for the reasons above, they are entitled to qualified immunity because it was not clearly established that police officers could not seize individuals under the circumstances presented in this case. *Id.*

Contrary to Defendants' position, the Court did consider the facts and arguments above when it ruled on the summary judgment motion. Defendants point out that the Court "omitted mention of material undisputed facts in its introduction and background section of the Order, and then later

---

[1] Thus, regardless of the Court's decision on Defendants' current request for leave to file a motion for reconsideration, this case will require the Court to impanel a jury for trial on several issues (unless there is a settlement or Plaintiffs dismiss their claims).

[2] Section 148 provides that any "person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a criminal offense.

2

1  miscast related facts as defendants' version of those facts, *i.e.*, as though they were disputed." Dkt.
2  No. 85 at 2. But the Court explained in its decision that because the parties "dispute many of the
3  facts at issue in this matter," the order only "provides [a] brief summary of the incident solely for
4  background purposes." Dkt. No. 184 at 1, fn. 2 (noting that the Court's analysis will only discuss
5  material factual issues). Moreover, the Court discussed the facts and issues that Defendants are once
6  again raising in this request in both the background section of the order and in the Court's analysis.
7  *See, e.g.*, *id.* at 2 ("The parties dispute whether Shawn then purposefully misled the investigating
8  Officers into looking for the suspects in the wrong direction.") (citations omitted); *Id.* ("As Shawn
9  stepped forward, Serna told him that he was under arrest and to place his hands behind his back. In
10 the ensuing scuffle — the details of which both parties vehemently dispute — Shawn was physically
11 taken down by both the Officers and Sarah was pepper sprayed by Serna.") (citations omitted); *Id*. at
12 5 ("It assumes that the Officers' testimony about their good faith belief is true and disregards
13 Shawn's testimony, which provides that he did not misdirect the Officers and the only reason they
14 arrested him was because he volunteered to corroborate Jackson's account that Serna used
15 unreasonable force to arrest him.") (citations omitted); *Id.* at 6 ("According to Defendants, Shawn —
16 who was a large man that had not been ruled out as being a suspect in the earlier assault —
17 interjected himself into Jackson's arrest and stepped towards Serna, challenging Serna while
18 refusing to take his hands out of his jacket's pockets (where he could have been carrying a
19 weapon).").[3]

20       Thus, Defendants' actual problem with the summary judgment order appears to be, as
21 explained in further detail below, that the Court's interpretation of the submitted record was
22 incorrect and that Defendants' arguments that the undisputed facts show that there was probable
23 cause to arrest Shawn — the same exact arguments contained in their summary judgment motion —
24 should have been adopted by the Court. The Court consequently agrees with Plaintiffs that these

---

26     [3] In any event, failing to discuss certain facts to the satisfaction of a party "does not
demonstrate a manifest failure by the Court to consider those facts" and "[r]econsideration on this
27 ground may be denied for that reason alone." *Del Mar Seafoods, Inc. v. Cohen*, 2007 WL 2457570,
at *1 (N.D. Cal. Aug. 27, 2011) (citing Civil L.R. 7-9(b)(3)).
28

facts and issues were thoroughly considered during summary judgment and granting leave for Defendants to seek reconsideration would be improper since Defendants asserted these arguments earlier. *See* Civil L.R. 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered."). Nonetheless, because Defendants take issue with the decision on summary judgment on Shawn's unlawful arrest claim, the Court further discusses its rationale for finding that there is a genuine dispute of material fact on this claim.

The critical inquiry on Shawn's unlawful arrest claim is whether there was probable cause to arrest him for violating Section 148 (i.e., for willfully resisting, delaying, or obstructing Serna and Moriyama's duties as police officers). At trial, the jury will likely be instructed on this particular issue based on the following model instruction from the Ninth Circuit:

> In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officers had probable cause to believe the plaintiff has committed or was committing a crime. In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested without probable cause. "Probable cause" exists when, *under all of the circumstances known to the officers at the time,* an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Ninth Circuit Model Civil Jury Instruction 9.18 (emphasis added). Defendants are correct that "[r]egardless of the reasons initially given for making an arrest, an arrest is valid as long as there is probable cause to arrest for any offense." *Davis v. Cnty. of San Bernardino*, 2009 WL 3838287, at \*5 (C.D. Cal. Nov. 13, 2009) (citations omitted). Moreover, "probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs." *Id.* (citations omitted).

Defendants argue that because Serna and Moriyama testified that they believed they were initially misdirected by Shawn, this is sufficient for them to have had probable cause to arrest Shawn for violating Section 148, or, in the alternative, to at least be entitled to qualified immunity since it was a reasonable mistake on their part to have such a belief. Dkt. No. 185 at 5-6. The key to the

4

probable cause analysis is to examine all of the information available to Serna and Moriyama *at the time* of Shawn's arrest (which must be interpreted in a light most favorable to Plaintiffs since Defendants are the parties that moved for summary judgment). Here, based on Shawn's testimony, Serna and Moriyama only knew that when they were searching for the suspects, Shawn told them that the suspects went in "that direction" and nodded towards the Ferry Building, which was the direction that the suspects went. Dkt. No. 156, Connolly Decl., Ex. D (Shawn's Depo.) at 120-21. Shawn has therefore testified that he did not misdirect the Officers. *Id.* at 120-23. Applying the necessary objective standard mandated by the probable cause analysis, this Court found that a reasonable officer could not conclude from these facts that Shawn had willfully misdirected Serna and Moriyama. Defendants' argument that Serna and Moriyama have testified that they reasonably believed they were misdirected does not change this analysis. A rational juror may conclude that the Officers are lying on this issue (i.e., they *did not* have this reasonable belief) and determine that at the time of Shawn's arrest, Serna and Moriyama only knew that Shawn had nodded in the direction that the suspects actually went.[4] The record before the Court could support such a conclusion since Shawn's entire claim is based on the premise that Serna and Moriyama used excessive force to unlawfully arrest him only because he volunteered to act as a witness to the alleged assault on Jamal Jackson.

Defendants are correct that Shawn concedes that Serna and Moriyama went in the opposite direction of where he nodded and he never even bothered to correct them. *Id.* at 126. But this is just evidence that Defendants may present to the jury to show that Shawn is not credible and he did misdirect the Officers, which is why they went to search the parking lot rather than the Ferry

---

[4] Moreover, Serna and Moriyama's "reasonable belief" would require the Court to improperly consider subjective evidence of the Officer's actual motivations and beliefs. If the Court were to consider such evidence, all police officers could simply testify after an unlawful seizure that they reasonably believed at the time of the arrest that the suspect had delayed their duties in violation of Section 148, entitling them to qualified immunity regardless of what the objective evidence showed. The cases cited by Defendants do not support this novel theory. Rather, these cases stand for the proposition that the Court should look to the objective evidence of what the officers knew at the time of the arrest, which in this matter shows, based on Shawn's testimony, that he did not misdirect the Officers.

5

Building and Shawn did nothing to tell them about their mistake. In evaluating this testimony, the jury may also take into consideration Shawn's explanation for failing to notify the Officers that they were heading in the wrong direction. *See* Shawn's Depo. at 126, 130 (explaining that he was not a police officer and it was not his "business" or responsibility to inform Serna and Moriyama that they were going in the wrong direction, and that he was just trying to get the Officers away from his wife and children). But such a factual evaluation of the record would be improper on summary judgment, and therefore the Court found that there was genuine dispute of material fact on this issue.

The same reasoning applies to Defendants' contention that it is undisputed that Shawn failed to take his hands out of his pockets when ordered to do so, resulting in the Officers having probable cause to arrest him for violating Section 148. Dkt. No. 185 at 2 (Defendants base their position on the argument that "*[b]oth Shawn* and Sarah Myers admit that Shawn did not take his hands from his pockets when ordered to do so by Officer Serna.") (emphasis added). The record, however, is not as clear as Defendants make it out to be with respect to Shawn. Shawn's cited testimony on this issue was as follows:

> Q: During that period of time, did Mr. Serna ask you to take your hands out of your pocket?
> A: I believe he did.
> Q: And did you?
> A: I can't remember for sure.
> Q: Is it possible you kept your hands in your pocket?
> A: Again, anything is possible.
> Q: But you don't have — is it fair to say you do not have a clear recollection of removing them from your pockets when asked by Officer Serna?
> A: Not at this time.

Shawn's Depo. at 207. Later in his deposition, Shawn was asked about his statements to Serna and returned to the issue of where his hands were during the altercation:

> A: My statement was "Are you going to shoot me in front of all these witnesses?" He put his hand on his gun, I hadn't done anything. My question was "So are you going to shoot me?"
> Q: Would this have been after he asked you to remove your hands from your pockets?
> A: I can't be specific to that.
> Q: Did he ever tell you — did he or Officer Moriyama ever tell you before they took you to the ground to put your hands behind your back?
> A: Yes, sir.
> Q: And did you put your hands behind your back?

6

> A: No, sir.
> Q: Why not?
> A: I never had a chance to.
> Q: And do you recall who asked you to put your hands behind your back?
> A: Officer Serna.
> Q: This was as he approached you?
> A: Yes, sir.

*Id.* at 209-10.

The above testimony shows that Shawn never specifically admitted that he directly disobeyed Serna's order to remove his hands from his pockets. A more proper interpretation of the evidence is that Shawn does not remember where his hands were when Serna initially approached him. And viewing all of the evidence in a light most favorable to Plaintiffs, a rational juror may conclude that the Officers did not have probable cause to arrest Shawn because, as Shawn testified, Serna took him to the ground before he even had a chance to remove his hands from his pockets. *See Davis*, 2009 WL 3838287 at *6 ("In construing the meaning of these terms, 'it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders.'").[5] Defendants are correct that Sarah's testimony on this issue corroborates their position that Shawn never took his hands out of his pockets even though he was instructed by Serna to put his hands behind his back. Dkt. No. 156, Connolly Decl., Ex. E (Sarah's Depo.) at 89-92. But, as the Court explained in its summary judgment order, this evidence simply leads to additional factual issues that are more proper for a jury to evaluate. *See* Dkt. No. 184 at 6, fn. 6. Defendants remain free to present this evidence to the jury to show that Shawn is not credible and the testimony from Serna, Moriyama, and Sarah provides that he failed to comply with the Officers' orders to remove his hands from his pockets. In the same manner, Plaintiffs remain free to present evidence from their third-party witnesses who have testified that they believed Shawn's hands were not in his pockets when Serna approached him. *See* Dkt. No. 188 at 4.

Because of the above factual disputes, the Court found that triable issues remained on

---

[5] In a parenthetical citation for this proposition, *Davis* cited to *Mackinney v. Nielsen*, 69 F.3d 1002, 1005-06 (9th Cir.1995), explaining that an "act of 'momentary disobedience' by 'refus[ing] to comply for only a few seconds' with police order to stop writing on sidewalk does not constitute resistance, delay, or obstruction." *Davis*, 2009 WL 3838287, at *6.

7

Shawn's unlawful arrest claim and the Officers were not entitled to qualified immunity. Defendants' request for leave to file a motion for reconsideration, a restatement of their arguments from summary judgment, does not change this analysis. Accordingly, it is DENIED.

**IT IS SO ORDERED.**

Dated: October 22, 2012

Maria-Elena James
Chief United States Magistrate Judge